With police accord, Danny Howell for the appellants Martin Conway and the law firm of Fessner, Colomado, and Conway. This is a Martin document case which at the outset has some jurisdictional questions as well as a pending motion to dismiss on standing grounds. I would say that with respect to the largest question, perhaps, which is we have an order from the district court that rejects a report and recommendation of the bankruptcy court with respect to two aspects, Martin doctrine violations and willful violations of the automatic stay by a former debtor in Chapter 11 and 7 bankruptcy in a lawsuit, a total of three suits I guess, against their former Chapter 11 counsel who was also subsequently in the Chapter 7 hired as special counsel by the Chapter 7 trustee under the statute that allows that. However, the district court in its order first said that the state court has to determine whether or not there was a statute of limitations issue because in the court's view, the district court's view, the bankruptcy court was litigating the state court malpractice case by saying that it appeared to the bankruptcy court that the case was time barred on its face and second that the district court enter a discretionary abstention under the bankruptcy statute that allows for that, which is again Section 1334C1 with the notion that it was necessary for the state court to make a determination that would have some bearing on the Martin doctrine. Can we review the district court's decision to abstain? And this is why I brought it up first. In our view, the notion of abstaining under the statute to a proceeding, and the word proceeding is used in both the permissive and mandatory abstention portions of the statute, a proceeding which essentially will be void ab initio because there is no jurisdiction for that proceeding, it doesn't hold water, although I will say right away, there is virtually no authority and if this circuit chose to address it, it would be the first circuit court of appeals to address the question in a Martin doctrine case, with Martin doctrine being jurisdictional exclusively to the bankruptcy court, can a state court proceeding be the subject of abstention, which effectively leaves everyone out of court? The whole point of the Martin doctrine is, if it applies, to never permit this type of proceeding to go forward. If abstention is allowed, I found the district court opinion a little confusing, and maybe you did too, there seemed to be a ruling about the Martin doctrine, but then the court seemed to abstain, saying there are facts that need to be sorted out potentially in the state court about who was, in what capacity was Conway acting as the attorney for the company or in service of the trustee, et cetera, and so out of kind of comedy, I'm going to defer to the state court to decide that as a kind of preliminary matter, and then as you mentioned, the same thing with the statute of limitations, that I'm going to defer to the state court on that, and if that's what the district court did, if we get into the merits of the Martin doctrine, aren't we reviewing the merits of the abstention decision? You would necessarily, the court would necessarily have to determine that in this particular scenario the abstention statute does not apply. That's a question of law. If I'm wrong, we're not here long with respect to that issue, but we are effectively out of court because all anyone has to do when a lawyer hired by a trustee is sued by the former debtor is sue them for some breach of duty and challenge that particular, again, the jurisdictional issue should be the one that weighs out, but have an abstention order entered so that it's guaranteed that when the case in the state court is done, there's nothing left for the bankruptcy court to do or the U.S. district court to do. To your first point, your honor, as far as what the district court did, this is a little bit watch what it did, not what it said, because yes, it did say at the outset that it was making a determination as to the Martin doctrine, but then it said, well, no, the whole point of this is that the state court is the only court that's going to litigate the statute of limitations, and that was fundamentally wrong, because that's not what the Martin doctrine is. The bankruptcy court doesn't say we're going to figure out whether or not there's an out practice case here. It says, first, was this suit bought before there ever was a request to us, the bankruptcy court, for permission to do it against an officer of the court appointed by the court to assist in the only thing that was left to do in Chapter 7, which was to seek three collection cases, no other assets there. If that suit was bought before there was permission, it could be the most prima facie, well-plead case in the world, and it's void, and there's no further inquiry. If there is a, if it's not the case, and really you can do this as the bankruptcy court did as an alternative, one of the factors is whether or not there's a prima facie case, and if there isn't, this is a jurisdictional determination. No court is ever going to determine the matter if the bankruptcy court says, prima facie, it looks like this case is barred to me. It doesn't seem like it is a case that will hold water. It's one of the factors I consider in my decision, assuming there was, again, assuming there was never a suit filed. In this case, there was a suit filed twice without ever asking the bankruptcy court for their permission. There was a trip to the bankruptcy court, and then a quick trip back with the notion that, well, maybe this isn't something we really want to ask about. The district court got it backwards, and again, in our particular instance, the Barton-Docker determination has nothing to do with the state court determination, which, by the way, the case restarting, it granted summary judgment on the statute of limitations were on the Court of Appeals. I don't know how long we'll be there. Ultimately, if this sort of question came up again with respect to the Court of Appeals actually reviewing it, my guess is the Supreme Court of Virginia would likely take cert on this issue because it has to do in part with fundamental issues of accrual. However... Sorry to interrupt you. Does that moot anything in front of us? I know there's still a sanctions argument, but is anything mooted in front of us since the proceedings in the state court have gone forward? Well, no. Again, what's happened so far is something that at the end of the day is likely to be deemed to be void. We will spend years, as we've already spent five years, litigating this matter to no end because at some point or another, when someone gets the chance to do it and make a determination, this case is about as clearly violative of the Barton Doctrine as anyone is ever going to see. And beyond that... Can we receive a submission about what has happened in the state court since this was briefed? I have not. And frankly, I was uncertain as to what... I'm not saying anyone's at fault for not doing it. I'm asking someone to please do it. I'm sorry. I apologize for not understanding. First, I got scared. Sure. I understand the panic instinct when you're on that side because it may not be determinative of anything, but as I was thinking about this case, I know that this was set for November and I was curious about what had been going on. And of course, I had to mention it, but I believe it's absolutely appropriate to ask for and to receive a brief. It would point out, obviously, that we are, well, in addition to what has happened, that we're still at the start of what probably is a long road. The case below on summary judgment turned, as did the issue of the violation of the automatic stay in the district court, on what constitutes a cruel of the cause of action against a lawyer for malpractice. In both courts, the defining case is Shipman v. Kruk, which will have its 20th anniversary next year and is the lead case in Virginia on this context and it arises in bankruptcy in which said, we start the clock when there's the slightest damage or whether it's an irreproachable legal injury. In that case, filing a Chapter 7 meant the loss of a revocable trust. The debtor had to power it transferred permanently to the trustee. There wasn't any damage for quite a while, except payment of a filing fee. In this case, there was extensive allegation of, in the Chapter 11 proceeding, that the attorney failed to properly fight lift stays, failed to get a plan approved, and ultimately the case was converted on the motion of the U.S. trustee. And when that happened, the only assets of this estate transferred in control from the debtor in possession to the trustee permanently. In fact, the debtor even lost the legal right to object to a settlement because it was a no-assets case otherwise. Under Shipman v. Kruk, clearly there was a cruel, and district court was wrong about that, saying that there wasn't enough fact to determine a cruel. Cruel isn't that big a deal in Virginia in terms of figuring it out. Now, we said, and if in fact the statute with respect to abstention, discretionary abstention, is a hurdle that the court determines we don't overcome, that this really is an issue collateral to the underlying determination of malpractice and one in which we are, the litigants are effectively out of court if the case is not addressing this. And that has in particular application in the context of Barton because, again, the primary purpose of Barton is to make sure that trustees and the officials who are appointed to work for them don't spend five years defending a state court claim that should be barred under the common law of the Barton Doctrine. Most trustees are sole practitioners, those small firms, and they provide a service, they don't just make money, and one of the ways they do it is that they're not going to be dragged through court. This is a particularly egregious case, but that's not what determines things here. What is in fact at issue is, first of all, can we proceed because of the notion of this particular type of case fitting into that very narrow window of collateral order doctrine that there's a square peg and a round hole for everybody who comes up and argues that before the court. But in this case, I do think it fits. And then ultimately, whether the court accepts the notion, there was an injunction entered by the bankruptcy court against further continued litigation of the state court, which injunction was lifted by the district court and a refusal to enter an injunction permanently. And so we do have an appeal also with respect to that issue. And by the way, that's not something somebody threw in. The only reason that Martin Conway and his firm sought to reopen the bankruptcy case was because they'd been sued three times over the same facts over and over again and brought back into bankruptcy court from time to time. And there was not going to be an end to it, as sometimes there isn't. People in a divorce, people in bankruptcy, seldom happy with the outcome and difficult to let go of disappointed expectations. And this is a case like that. But that's what the Barton Doctrine is about. The bankruptcy court didn't just determine that the Barton Doctrine applied. It had actually done that a long time ago. It determined that there had been egregious filings after it had said, this can't be done. This is not permitted. And that there was a clear violation of the automatic stay. And that it was, it was time for one of the very rare instances when any court ever does something like this and join further litigation, not only by the party, but by their counsel, so that this stops. The district court had a view of this that was skewed based on, I think, a fundamental misunderstanding of how the Barton Doctrine works, although confusing to me. Because just two years earlier, in almost the same set of scenarios with respect to the legal issues and the Barton Doctrine and the statute of limitations prima facie issue, the exact same court got it right. Right down the road. And understood in that opinion, which we've discussed extensively in our briefs, that when the statute of limitations is discussed, it's only discussed by virtue of wanting to know whether or not it looks like it's a prima facie case. That opinion also said that when the suit is filed before permission is obtained, then that suit is without jurisdiction, even if, had permission been asked, it would have been granted. Because it's too late. There is no redo under the common law of the Barton Doctrine, and that's a uniform law with respect to how that's applied across the country. In this case, the failure to do that wasn't just, well, all right, this was an omission. It was part of a pattern. And that pattern was serious enough for the bankruptcy court to do what it did. Now, by the way, the bankruptcy court said, this is a court proceeding. And indeed, it's hard to imagine how it isn't. Because all we had to do, and the only thing Mr. Conway did, had to do with administration of the estate's assets. It was only hired basically to sell the assets by virtue of suing people and settling. That's all that anybody ever did here. There was nothing left to do. But in this particular instance, the lever of egregious activity. Doesn't our circuit give immunity to trustees when they're acting pursuant to a court order or within the scope of their authority? We have an immunity doctrine that's separate from Barton, right? They do. And it is often something that is adjudicated, although primarily, again, immunity has certain aspects that may or may not be a square peg for this particular case. But at any rate, the Barton Doctrine is simply, well, it is regarded in a certain way with a particular understanding that it is a primary job of the bankruptcy court. The bankruptcy court is appointing trustees and is appointing court officers to assist them, professionals to assist them. The bankruptcy court is responsible to make sure that things don't happen that are just absolutely wrong, contrary to law, and harmful to the whole purpose of what the bankruptcy court's trying to do in allowing either states to be reorganized or allow the assets to be sold and to allow people to get on with their lives. This can't happen. And that's, there's an argument to be made, right, that that's, the bankruptcy court, the reason it has this doctrine is because of the res, right, because of the estate, but that once the bankruptcy is closed, then maybe the Barton Doctrine shouldn't continue to apply. At least one court has said that, right? Yes, and consistently, the answer from courts across the country has been that the mere fact that the case is closed doesn't change the need to protect the trustee and other in the court appointed professionals, and also, by the way, maybe that's where immunity comes in. Well, I think what operates is there is, in fact, still an estate that is being administered if someone's out there about to recover $2 million. This, as the joint appendix document reflects, after this case was fully administered, there were about $1.7 million in allowed claims that weren't going to be paid. The issue of what happens with respect to that particular type of lawsuit goes directly to what the bankruptcy court's doing, I think, and the inability, by having an order that basically says, no, the bankruptcy court can't adjudicate state law claims, the inability to really do its job under that circumstance is significant in terms of its impact down the road. By the way, this court's opinion, McDaniel v. Blunt, with respect to attorneys being encompassed in the protection of the Barton Doctrine, who are especially special counsel, obviously, who have this limited function under the statute, the effect of the abstention, that's going to obviate the impact of that case, at least as far as lawyers or other people. That particular opinion was the first time the 4th Circuit had spoken on that issue, although it joined the other circuits that it addressed in agreeing with it. Nevertheless, it provided clear, important protection, and that's not going to happen if abstention is allowed and if we don't have at least a notion that even if we can't address abstention, we can address this as a collateral issue. There's nothing in the state court, and it will be clear from the report that we submit, Your Honor, there's nothing in the state court that addresses Barton. Now, in theory, a state court can address it, but the state court's not in a position of really being aware, having sufficient facts, having sufficient prior experience of administering federal common law under the Barton Doctrine, and so generally, it doesn't happen. That's why there's a requirement to come back to the bankruptcy court before a suit is filed. That requirement is violated not once, but twice, and the pleading is amended to do things the bankruptcy court was warning against. Bankruptcy court is the court that's equipped to understand how to protect the interests of everyone who appears before it, and that's why this doctrine is so important. The fact that we have one opinion so different from what happened two years ago at the same There's a serious need for clarity that would be beneficial to the court system in the entire Fourth Circuit should this court deem that it can address this case and then address the merits. And I only reserved two minutes, so I still have time left, I'm sorry. Not used to that. Counsel, when the numbers are going up, that's how much time you're over. Oh my gosh. I apologize. I get my glasses checked. Thank you very much for your attention. Thank you. Thank you. Mr. Lopato. May it please the court, John Lopato for the, excuse me, your honors, for the Appellee Smith Development Inc., and with me is the president of the corporation, Mr. M. Kevin Smith. Your honors, in addition to jurisdictional problems about appealing an abstention ruling, there are other jurisdictional problems here before the court to even hear this case. We filed a motion to dismiss that said that the reopening of the case by Conway Pesner, reopening of the bankruptcy case, excuse me, in January 2019 was not in accordance with the reopening standards under 11 U.S. Code 350. That says a case can be reopened by a debtor, creditor, or party in interest. Now, the party in interest has to have standing, but also has to have subject matter. And the most important subject matter reason to reopen a closed bankruptcy case is to gather more money, more assets to pay off creditors. Their petition is in page 451 of the appendix, petition to reopen. It has nothing about that. Also, professional... What about the party in interest requirement suggests that it's jurisdictional rather than it's just a requirement for proceeding to reopen? Well, your honor, we also, in our motion to dismiss, stated that lawyers sometimes can be a party in interest to reopen, but only if they are doing so to protect their fee. We didn't challenge the fee they took away. Right, but isn't this an argument about whether they fall within the class of people who can bring this claim, whether they qualify to take this action? Why does it have to do with the power of the court? Why is it jurisdictional? We cited cases where courts have not permitted reopening because they haven't put in their petition to reopen, that we're doing so to gather more money for the creditors. And they didn't do that at all here. End of story. Again, that might mean that they shouldn't be allowed to proceed, but why is it jurisdictional? Why does it have to do with our authority to hear the case? Well, it was the bankruptcy court who made the mistake. We opposed the reopening, and they proceeded. The bankruptcy court then made a report and recommendation to the U.S. District Court that the U.S. District Court rejected. But I'm going back earlier and saying the bankruptcy court was incorrect to grant the petition to reopen. Remember, the petition to reopen came four months after we had... Are you saying it was incorrect to grant the petition, or that it lacked the power to decide? Both. Both, Your Honor. And where is it in the statute or the rules that we see that the court lacked the power? We cited those cases in our... I don't know if we worded it that way, Judge, to be honest. We cited those cases in our motion to dismiss that said that if you don't satisfy the requirements of reopening the case to get more money for the creditors, the petition to reopen should not be granted. Well, one thing it seems to suggest that it might be addressing Judge Rushing's question is that here, it does seem to be jurisdictional because it's not only the person standing, but actually the question of the subject matter itself. It's to protect certain interests. And what you're saying is that they don't allege an interest that the bankruptcy would have any basis to protect once it's closed. That was exactly the thrust of our motion to dismiss. They weren't seeking to protect their fee. They can keep that fee. Now, the fee they took below in the bankruptcy court was a disgrace to the Virginia Bar and a disgrace to the bankruptcy bar. They cheated and deceived and misled this corporation. And so we asked the question, who was their original client? And then we cited the letter they sent to him in November 2010 and said, you better cooperate with the trustee, even though we helped you, we're representing the trustee. But they never explained to him that when they're appointed to represent the trustee under 11327, 11 U.S. Code 327E, that they abandon all their obligations to their original client debtor. So maybe it's like prudential standing. It's like statutory standing. You don't dispute that they have Article III standing, right, that they are claiming an injury that could be corrected by a court order. Well, Your Honor, we're not here on, we're here on the district court's rejection of the report and recommendation. I'm just saying that. Yeah, but you see my sticking point is you say we should dismiss for lack of jurisdiction and the Supreme Court has told us, you know, a lot lately that we use the word jurisdiction too much to mean things that aren't actually about the court's power to decide. It's not that the bankruptcy court acted without authority, but rather that the bankruptcy court, you think, got it wrong in assessing who this was meant to cover, who was meant to be allowed to reopen. Yes, yes. And that is maybe a substantive, a merits argument, but it's not an argument that the jurisdiction. I believe we captured enough of that to meet the court's concern in our motion to dismiss, Your Honor, and the briefing went beyond that. But I was saying that, remember, this petition for reopen came months after we had survived the first motion to dismiss in state court on our legal malpractice action, and that was another reason it should not have been granted. Now, they cite only a few cases on reopening a case. The Brooks case they cite from the Eastern District of Virginia was not a Barton doctrine case, and that one's where the debtor moved to reopen. Well, the debtor's right in the statute. He can do so. But the court said, we're not abandoning the reason you're reopening this. It was a tax refund, because that might go to creditors that can participate in this money. What my brother Howell said is absolutely false. This bankruptcy case in an in-rim court is long closed. The statute of limitations of the creditors have run. Any money we get from the Conway lawyers will go directly to this corporation. And the district court judge so held. They also cite a case from New Jersey, the Honig case, but that was reopened because the debtor was accused of committing fraud on the bankruptcy court. They said, we'll abstain, but we're not going to issue an injunction against the state court matter. Your Honor, on the abstention doctrine itself, the district court cited two important decisions from this circuit that the Conway lawyers do not respond to at all in their opening brief or reply brief. The first was the Trustegard case, where there was a declaratory judgment filed in federal court on a simple automobile accident case over insurance coverage, and this court said that it's not appropriate to invoke declaratory judgment or get involved in this matter at this time, because we need a state court record to be developed and decided. The other case about injunctions issued against the state court, which is what this bankruptcy judge did, is the A.H. Robbins case from this court, a Dalkin Shield case, where this court laid out an elaborate test for issuing an injunction against the state court, knowing how serious that was. And it said there were state court actions by insurance companies on these Dalkin Shield actions that would directly affect the amount of money available in the bankruptcy court to pay the Dalkin Shield claimants. The court said, yes, in that case, we will grant an injunction. That elaborate test can't nearly be met by them. Now, let me talk about the Barton Doctrine and how it's overstated. Isn't your best abstention argument not an argument on the merits, but an argument that we lack jurisdiction to review a grant of abstention? I would agree with that, Your Honor. My adversary, I don't think, answered the court's questions. This is an area that the court should decline to entertain jurisdiction over this appeal from the abstention ruling. Because, and I'll get to his scare tactics about being out of court and Barton Doctrine and what the bankruptcy bar is talking about right now. The bankruptcy doctrine was not violated by the complaint of Smith Development, Inc. We were not suing the trustee directly. We were suing the debtor's attorney for actions he took that directly damaged the debtor. The famous case of McDaniel v. Blust from this court calls out for the question, who is suing whom for what? In that case, the trustee had a law firm. He hired one of his own lawyers in his law firm. They had not represented the debtor. The trustee hired a lawyer from his own law firm, and they sued officers of the debtor corporation for looting the company, trying to get money back that they could distribute to creditors of the debtor corporation. The officers of the debtor corporation sued the lawyer the trustee hired in state court and said, you used false income tax returns to proceed against us. It was removed to federal court. This court upheld application of the Barton Doctrine because it said the lawyer was working for the trustee to gather more money to pay creditors. The lawyer was not subject to a conflict of interest complaint as we have here. The lawyer and the Conway lawyers, by contrary, they helped prepare spreadsheets and damages in these adversary actions for their client, the debtor corporation, showing $2 million worth of damages. Do you agree, Mr. Howell, that a state court can apply the Barton Doctrine and that if someone brings it up in a state court proceeding, then the state court can assess whether the doctrine prevents it from exercising? No, only the bankruptcy court can issue the Barton Doctrine. The state court... Why is that? Well, because the Barton Doctrine originated as a protection of trustees who would be subject to lawsuits, usually by creditors, who claim they are being overreached. Or people, creditors or people that owe the debtor money. That is how it originated. Right. But what is to prevent a state court, someone arguing at the state court, this proceeding is prohibited because of the Barton Doctrine? The state court here had no occasion to rule on that because they were not... They had been enjoined by the bankruptcy court from proceeding because of the Barton Doctrine, but the district court lifted that injunction. Yeah. I'm just asking as a legal matter, not... Regardless of what happened in this case, I'm just trying to sort out, is this a doctrine that's available in state court also? The defendant could only invoke it the way they've tried to here. The defendant attorney, if he sued, could only invoke it the way they tried to do here. But let me talk about his sympathetic story about the small law firm serving as trustees. The Barton Doctrine has always been stated that we want to encourage people serving as trustees. That's not at play at all here. This law firm had already entered the fray. They were paid money by the debtor corporation to file the petition first for Chapter 11, and then they continued to represent them after the conversion of Chapter 7. We lay out in our brief how they... In another case where they were representing him individually, they said, oh, that could be a conflict of interest. We'll get an order of withdrawal and substitution, get another lawyer in. They did that. They never did that upon the conversion of this case to Chapter 7. They never sat down with the client. They said, you know, under Chapter 7, we've now been hired by the trustee to finish up these three big adversary actions, and we're going to be primarily answering to the Chapter 7 trustee and subordinating your interests. Why don't you get a new lawyer? They never did that. And those are the arguments we used to persuade the state court judge to sustain the cause of action in their first motion to dismiss. Now... And I'll just reiterate, since I mentioned it before for both sides, if you would be willing to file a 28-J letter, just a short letter within the next couple of days, summarizing for us the current status of the state court proceedings, I would find that helpful. We conferred before the argument, Your Honor, and realized we were remiss in not doing that. There's an appeal pending on whether a five-year statute of limitations applies to a written contract they had with Smith Development or a shorter statute of limitations applies, whether there's just an oral contract after the conversion to Chapter 7. That's the issue, and we're confident we're going to prevail on that, but we'll report it to the court. It's pending at the Virginia Court of Appeals. Under the new code in Virginia, we now, hallelujah, get an automatic right to appeal a state court ruling to a higher court. It used to be by just petition for writ. But let me cite to another important element of the abstention and the deference to state court here in the comedy that Judge O'Grady discussed in his district court decision. Virginia Code 54.1-3906 says that, every attorney shall be liable to his client for any damage sustained by the client through the neglect of his duty as such attorney. That's very rare. Few, if any, states have that, and that's a valid element that must be deferred to under comedy and under the abstention doctrine, also under the Stern v. Marshall case from 2011 from the U.S. Supreme Court. That case limited the ability of the bankruptcy courts to intrude upon state court matters, even if they're core, even if they're going to get some money for the estate. But here, they're not core. They're not going to get any money for the estate, and the district court properly recognized that. And the district court also acknowledged that the Smith development is dead or never consented to having the legal malpractice case tried in the bankruptcy court. It belongs in the state court. Your Honor, unless your writers have any questions, I urge you to affirm the district court on all its elements. They have jurisdictional problems on whether an abstention can be appealed, but they also have procedural problems on whether the petition for reopening was even valid when it was granted in January 2019 by the bankruptcy court, because the petition to reopen lacked any of the required elements or components to have a bankruptcy case reopened. It did not seek to get more money for the creditors, for the estate, and it did not seek to protect a professional's fee. Thank you. Thank you, Mr. Lupano. Mr. Howell, you have some time reserved. I'd like to answer Judge Rushing's question with respect to the state court jurisdiction to entertain a Barton Doctrine challenge. I don't know whether it helps me or not, but I'm not going to pass on at least the opportunity to share what the law is, the state court has full authority to do that. Similarly, the district court, the U.S. district court, if a case is brought to it, it should have gone first to the bankruptcy court. Numerous district courts have held we don't have jurisdiction over this. Bankruptcy court is the only court that makes the determination about whether or not it's violated, but the state court can say, in our view, what's in front of us looks like it's violative and we're not going to do it. And then they can go to the bankruptcy court. The problem is they've already filed. See, again, if they had such a slam-dunk malpractice case, you'd think they would have asked the bankruptcy court for permission before they filed it instead of afterward. That's what they did. I appreciate that. Thank you. I'm sorry. Thank you for clarifying the legal question. I appreciate it. Again, you know. And I commend you for this. Better or worse. You pointed out abstention in your brief, too, which, again, you know, you did it because it was the law, even though it may not benefit you. And I wanted to commend you for that. I thought it was, your candle with the court was commendable. Old enough now to try to get it right regardless. And by the way, I think it might be helpful if in a short letter, with regard to what happened, you know, the circuit court did issue a letter of opinion, and it did also have a ruling from the bench, and it might be useful to provide that. I think it's fine to attach that to the 28-J if the other judges are. Do you think that's appropriate, a 28-J letter? Your Honor, no, as you asked the question, I know that I was wrong before you finished the question. Right. I apologize, Your Honor. Okay. So I've been, I know that, well, 10 seconds. I've been on the losing end of Trust Guard arguments before this court. But Trust Guard didn't have anything to do with an unknown area of the law that the court for the bankruptcy opinion we cited from the Sixth Circuit said the Sixth Circuit has not passed on the question of whether or not abstention is permitted, permissive, is going to be allowed in a Barton Doctrine case. Said it for a reason. Hasn't been addressed by any circuit court. Thank you very much, Your Honor, if there are no further questions. Thank you both, counsel, for your arguments. A very complicated case, and we appreciate so much for helping us with this. And we'd love to come down and greet you as we normally do in our tradition, but we can't, but know very much that we appreciate you being here, and we wish you well, and be safe. Thank you so much. Thank you, Your Honor. We'll proceed to our last case for the morning.
judges: Roger L. Gregory, Robert B. King, Allison J. Rushing